IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |  |
|---|---|---|
| IN RE: | ) | BK 16-81243 |
|  | ) |  |
| PLANET MERCHANT PROCESSING, INC., | ) ) | |
|  | ) |  |
| Debtor. | ) |  |

**PLANET GROUPS, INC.'S OBJECTION TO THE CREDITORS' MOTION FOR 2004 EXAMINATION (DOC. 241)**

COMES NOW Planet Group, Inc. ("PGI"), by and through its undersigned counsel, hereby objects to the Creditors' Motion for 2004 Examination of Planet Group, Inc. (Doc. 241) (the "2004 Motion") filed by the four former customers of the Debtor, TSYS Merchant Solutions, LLC, First American Payment Systems, L.P., EVO Merchant Services, LLC, and World Pay US, Inc. (collectively the "Customers"), and submits the following facts and authorities in support thereof.

## I.    BACKGROUND

**A.  Procedural Background**

1. The Debtor filed its voluntary Chapter 11 Petition on August 17, 2016 (the "Petition Date"). PGI is the Debtor's parent corporation.

2. On the Petition Date, the Debtor filed its Motions to Reject its contracts (the "Rejection Motion") with the Customers.

3. On August 30, 2016, the Customers each filed an adversary proceeding against the Debtor, PGI and West Partners, Inc. ("West"), and Dennis O'Brien. The Customers alleged PGI and West were the Debtor's alter ego and that PGI and West tortiously interfered with the Customers' business relations with the Debtor. The Customers sought damages and injunctive

relief to require the Debtor to continue to perform services under the contracts with the Customers that it was seeking to reject.

4. In their complaints each of the Customers admitted the Debtor had no employees and relied solely on PGI to supply its employees to conduct Debtor's affairs. In the words in EVO's complaint: "The Debtor has no employees and relies solely on employee support supplied by PGI." EVO Complaint, ¶44 p. 13, (Case No. 16-08041, Doc. No. 1; See also FAPS Complaint, ¶15 p. 5, Case No. 16-08042, Doc. No. 1; Transfirst Complaint ¶20(b) p. 5 ¶47 p. 10, Case No. 16-08043, Doc. No. 1; Worldpay Complaint ¶15 p. 6; ¶39 p. 11 Case No. 16-08044, Doc. No. 1 (all making substantially similar admissions).

5. The Adversary complaints were later dismissed by the Customers.

6. On September 23, 2016, the Court granted the Rejection Motion. As required under the 11 U.S.C. § 3650, the Debtor turned over the software as it existed on the Petition Date to the Customers.

7. On October 6, 2016, the U.S. Trustee appointed the Unsecured Creditors' Committee which consisted solely of the Customers.

8. On November 23, 2016, the Debtor filed its Motion to Sell substantially all its assets. That motion was denied without prejudice on January 3, 2017, and there is no sale motion currently pending.

9. On January 5, 2017, the Debtor filed its Motion to Convert the case to Chapter 7 (Doc. No. 199). The Debtor recited in the Motion to Convert that despite its attempts to meet and negotiate with the Committee to try to reach a settlement for a consensual liquidation of the Debtor's assets the two sides have been unable to make any meaningful progress. The Debtor further states that it chose to voluntarily convert the case to a Chapter 7 liquidation to allow the

2

case to proceed under the supervision of a Chapter 7 Trustee to allow for a prompt and an orderly conclusion.  Objections to the Motion to Convert were filed by the Committee and EVO.  The Motion to Convert was granted on February 7, 2017.   The conversion dissolved the Committee and rendered the Committee's 2004 Motion moot.

10. On March 1, 2017, the Customers individually filed a substantially identical 2004 Motion (the "2004 Motion") still based on a non-existent quick track sale to PGI.  In the Customers request 2004 examinations of the Debtor, PGI, West, and Raymond James & Associates, Inc. ("Raymond James") on a wide range of topics, and seek an extremely broad category of documents through a series of vaguely worded, overbroad requests.

B. **The Customers' 2004 Motion**

11. The Customers' 2004 Motion seeks, in summary, four general categories of information: (a) all documents relating to amounts owed to PGI or paid to PGI by the Debtor in the last 12 months (Requests to Produce to PGI No. 1, p. 4, 2004 Motion, Exhibit "B" Doc. 241-2); (b) all information regarding the efforts to sell the Debtor's business or assets, including information regarding prospective purchasers, their offers, discussions and other information exchanged (Requests to Produce to PGI Nos. 2-10, p. 4-5, 2004 Motion, Exhibit "B" Doc. 212-2); (c) personnel and employment information related to the PGI employees that worked on the Debtor's software. (Requests to Produce to PGI Nos. 11-12, p. 5, 2004 Motion Exhibit "B" Doc. 212-2); and (d) all communications between PGI and West Partners relating to the Debtor in the last 24 months (Requests to Produce to PGI No. 13, p. 6, 2004 Motion Exhibit "B" Doc. 212-2).

12. In the 2004 Motion, the Customers argue that the Debtor and its affiliates should be required to provide to them, not the Chapter 7 Trustee, the documents regarding the prior sale efforts of the Debtor's assets or business because the Debtor and PGI are conspiring to enter into

3

a fast track $50,0000 sale. The Committee claims these documents are essential to it being able to address the Debtor's sale attempts, and to determine if the employees who work for the Debtor are truly PGI employees, or were transferred to PGI at some point before the bankruptcy.

**C. Argument Summary.**

13. PGI submits the fundamental flaw with the Customers' 2004 Motion is its failure to recognize that the newly elected Chapter 7 Trustee is now in charge and in control of the Debtor's estate, the investigation of the Debtor's relationship with PGI and PGI's employees, and any future sale efforts. The Chapter 7 Trustee is also the party charged to investigate PGI's claim related to the payments due for the Debtor's use of PGI's employees.

14. While the Customers may have a better argument if PGI refused to cooperate with the Chapter 7 Trustee that is not the case. PGI reached out and offered to meet with the Chapter 7 Trustee at the outset of the case, has since produced over one thousand documents to the Trustee as requested, and has sat down and met with the Trustee and its counsel to answer their questions. The reason PGI is willing to make these disclosures to the Trustee but resists doing so to the Customers is the Trustee is independent and not a potential buyer of the Debtors' assets, nor a party who will attempt to hire away PGI's employees. Specifically PGI has produced to the Chapter 7 Trustee the prior sale information requested, invoices and 941 reports evidencing its employment of the personnel who worked for PGI, redacting only the personal identifier information for privacy reasons. In short, PGI has fully cooperated with the Trustee, and plans to continue to do so.

15. The Customers' motive in seeking this sweeping discovery in light of the fact PGI has already provided the information to the Trustee renders the motive for their 2004 Motion suspicious. As the Court certainly recognizes the Committee is made up of the Customers who

4

are each a potential purchaser in any sale, and would also benefit by obtaining confidential information related to the Debtor's business operation, key employees, proprietary source code, and other interested purchasers, their potential purchase price range and similar information. Under these circumstances, there is no reason to require PGI to also disclose this confidential information to the Customers especially given the Trustee now has total control of any future sale efforts. PGI submits that providing the Customers this inside information not available to other third parties who may be interested in buying the Debtor's assets will only chill the sale process. For these reasons and the reasons discussed below PGI submits the Customers' 2004 Motion should be denied at this time, or if granted, a protective order should be entered shielding the confidential past sale effort information, and PGI employees' information from any such required disclosure.

## ARGUMENT

**A. The Trustee has been provided the information he deems he needs so the Customers have no current need for the information requested by the 2004 Motion.**

16.     The Customers have no legitimate use for any of the information being requested in the 2004 Motion at this time, and for this reason the 2004 Motion should be denied. Bankruptcy courts hold that a threshold requirement of good cause must first exist before examinations should be allowed. *In re Continental Forge, Co., Inc.*, 73 B.R. 1005 (Bankr. W.D. Pa. 1987). As such, examinations having no relationship to the Debtor's affairs and no effect on the administration of the estate lack good cause and are improper. Id.  See also, *In re AOG Entertainment, Inc.*, 558 B.R. 98, 108 (Bankr. S.D.N.Y. 2016) (denying a creditor's request for a Rule 2004 examination and holding the party seeking such examination has the burden to show good cause for the examination by establishing that the proposed examination is necessary to establish the claim of the party seeking the examination, or that denial of such request would

5

cause the examiner undue hardship); *In re Metiom, Inc.*, 318 B.R. 263, 268 (Bankr. S.D.N.Y. 2004) (also requiring good cause for a requested 2004 examination be shown before it is granted.)

    1. **The Customers' request for all documents relating to amounts owed to PGI or paid to PGI by the Debtor in the last 12 months is not warranted.**

    17.    The information regarding payments to PGI by Debtor for those PGI employees that work with the Debtor, and the amounts owed between those parties, as well as the personnel information discussed above is not needed by the Customers to address any current issue in this case. The Customers may argue this information is relevant to the validity or amount of PGI's claim in the case. However, there is no pending claims litigation and it is too early to determine if such action has any merit because currently no value has been realized from the Debtor's assets for any distribution to unsecured creditors. Further, the validity and amount of PGI's claims will be addressed by the independent Chapter 7 Trustee in the case, with whom PGI has cooperated and provided information on these topics that he has requested. As such the Customers have no current legitimate need for the information requested, and the 2004 Motion should be denied.

    2. **The request for all information regarding the efforts to sell the Debtor's business or assets, including information regarding prospective purchasers, their offers, discussions and other information exchanged with potential prospects is not warranted**.

    18.    The requests in the 2004 Motion seek highly confidential information including the identities of prospects and information exchanged between PGI and those prospects during all prior sale efforts related to the Debtor. Fed. R. Bankr. P. Rule 9018 allows the court to "make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information." There are situations in

which the public interest in transparency is outweighed by legitimate commercial concerns." *In re Waring*, 406 B.R. 763, 768 (Bankr. N.D. Ohio 2009). Commercial information is information that is so critical to an entity's operations that disclosing the information will unfairly benefit that entity's competitors. *Id.* at 768-69. The disclosure of such information must reasonably be expected to cause commercial injury. *Id.* at 769.

19.    The 2004 Motion's request that PGI produce all communications and documents regarding any prior sale efforts including the identity of prospects and confidential information that was exchanged with them, is precisely the type of confidential information that should be protected from disclosure to potentially interested purchasers of the Debtor's business to prevent them from obtaining an unfair advantage in the sale process. The Customers' requests are broad enough to cover not only production of any privileged attorney client communications within or regarding the sale process, but also highly confidential, trade, proprietary and financial information regarding the Debtor's software code, intellectual products, and business operations, as well as all statements of interest received from other potential purchasers who wish to remain undisclosed, and the corresponding documents related thereto. This information was exchanged under non-disclosure agreements to help protect its dissemination to other third parties such as the Customers who are each potential bidders in any future sale. It has already been provided to the Trustee who is independent, not a potential bidder in this case, and will conduct or oversee any future sale efforts. As such, there is no valid reason for the Court to order PGI to also provide the information to the Customers who are some of the most likely bidders in any sale the Trustee conducts. Allowing the Customers access to this confidential information now, before the Trustee has formulated a sale plan, would give these Customers an unfair advantage in any future sale process, and will only serve to deter any previously interested or newly interested

parties from participating in future sale efforts, chilling interest, and reducing the value of the Debtor's estate.

### 3. **All personnel and employment information related to the PGI employees that worked on the Debtor's software.**

20. The 2004 Motion requests all PGI's documents regarding PGI's employees' employment, including their respective personal "employment agreement, W-2, non-compete agreement, non-solicitation agreement, confidentiality agreement, consulting agreement, retention agreement, [and] stay bonus agreement." (Requests to Produce to PGI Nos. 11-12, p. 5, 2005 Motion Exhibit B Doc. 212-2). PGI has provided this information related to its employees who worked for the Debtor to the Trustee. It should not be required to also provide to the Customers' competitors who have already attempted to hire these employees away.

21. Producing all employee information to the Customers who made up the Committee will be prejudicial and unduly burdensome to both the Debtor and PGI. EVO, during the pendency of the 2004 Motion hired former PGI employee Kim Gieken. Ms. Gieken was an employee who worked on the Debtor's software, and prior to leaving she improperly downloaded a great deal of the Debtor's key proprietary information and code. See Affidavit of Sherry Magwire, Exhibit "A". The fact EVO agreed to defend and indemnify her from claims by the Debtor or its affiliates in their employment letter, a copy of which EVO offered at the hearing on the Debtor's Motion for TRO, supports the inference she was hired to obtain that information and skill set and would require such a defense. See EVO's Notice of Intent To Offer Evidence Doc. No. 8, at p.3, filed in Adv. Case No. 17-08002.

22. The Customers' motive for requesting the employee information seems clear, if they can determine exactly what these employees are being paid currently, they can potentially sweeten the offer and hire them away more easily, just like EVO did Ms. Gieken. With the

8

software they already have, the Customers only need to obtain some of the key employees to effectively acquire the Debtor's core business operation. If a Customer can hire PGI's employees away from PGI it can obtain the Debtor's essential assets with minimal cost and no longer has any need or incentive to participate in any future sale of them providing no return to the estate and greatly reducing its ultimate value.

23. PGI has provided and is continuing to provide the information regarding PGI's employees which support its claim, and the fact it employs the people who do work for the Debtor to the Trustee. As such, any appeal the Customers' arguments may have had prior to conversion and appointment of the Chapter 7 Trustee are now removed. PGI should not be required to violate their employee's privacy rights by being ordered to provide these private individual's personnel files and highly confidential information to the Customers under these circumstances, and the 2004 Motion should be denied.

4. **All Communications between PGI and West Partners relating to the Debtor in the last 24 months.**

24. The 2004 Motion also seeks all communications between PGI and West Partners in the last 24 months concerning the Debtor. PGI has provided those communications regarding the prior sale efforts the Trustee has requested. The Customers' attempts to obtain this information is unnecessary at this time, and provides them with inside information that would potentially chill a sale of the Debtor's assets as discussed above. As such the Customers currently have no legitimate need for this information other than to allow them an unfair advantage in any future sale process. "An examination of a witness as to matters having no relationship to the Debtor's affairs or no effect on the administration of his estate is improper. Rule 2004 examinations cannot stray into matters which are not relevant to the basic inquiry." *In re Roman Catholic Church of Diocese of Gallup*, 513 B.R. 761, 764 (Bankr. D.N.M. 2014). "The

9

examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery." *In re DeShetler*, 453 B.R. 295, 302 (Bankr. S.D. Ohio 2011). For these reasons the 2004 Motion's request for this overly broad category of information should be denied.

## CONCLUSION

PGI submits that the 2004 motion filed by the Customers is a true fishing expedition with questionable motives that is unwarranted given the current status of this Case. It seeks information which has been provided to the Trustee and confidential and private employee information which does not have any bearing on any pending issue in this case. The Trustee is now in control, he has been given the information PGI has located relevant to the sale, its claim, and its employees that he has requested, and continues to cooperate with him. PGI's door remains open to the Trustee to discuss any other information PGI has which would be helpful to his liquidation efforts and the conclusion of this case. The Customers have no legitimate need for any of the confidential, proprietary and private employee information requested. Under these circumstances, and for all the reasons set forth herein, PGI submits the Customers' 2004 Motion should be denied.

Dated this 21st day of March 2017.

PLANET GROUP, INC., Creditor, and Party in Interest,

By: */s/ James J. Niemeier*
  James J. Niemeier, Esq., (#18838)
  James P. Fitzgerald, Esq., (#11313)
  McGrath North Mullin & Kratz, PC LLO
  First National Tower
  1601 Dodge Street, Suite 3700
  Omaha, Nebraska 68102
  Phone: (402) 341-3070
  Facsimile: (402) 341-0216

jfitzgerald@mcgrathnorth.com
jniemeier@mcgrathnorth.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served by electronic filing utilizing the Court's CM/ECF system which gave notification electronically upon all parties who have filed an appearance or motion by electronic filing in this case on this 21st day of March 2017.

*/s/ James J. Niemeier*
James J. Niemeier